CHAD D. HANSEN
Virginia Bar No. 96705
KILPATRICK TOWNSEND & STOCKTON LLP
1001 West Fourth Street
Winston-Salem, North Carolina 27191
Telephone: (336) 607-7308
Facsimile: (336) 734-2616
chadhansen@ktslaw.com

Gwendolyn C. Payton (to be admitted pro hac vice)
KILPATRICK TOWNSEND & STOCKTON LLP
1420 5th Avenue, Suite 3700
Seattle, WA 98101
Telephone: (206) 467-9600
Facsimile: (206) 623-6793
gpayton@ktslaw.com

*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION**

| | |
|---|---|
| COREY TUCKER, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>PEYTON PALAIO; MARK D. REILLY; MARK JENNINGS; SKELMIS, LLC (d/b/a RH NATURAL PRODUCTS, LLC); TAUTLINE, LLC; FASTINCENSE.COM; LGI HOLDINGS, LLC (d/b/a ALPHABET WHOLESALE); LP IND., LLC (d/b/a OLISTICA LIFE SCIENCES GROUP, CENTRALIZED SERVICES, JORDAN PROCESS, CASCADE NATURALS, DELLA TERRA PHARMACEUTICALS, NATUREA BIOMATERIALS [a/k/a CANNOPY CORPORATION]); JOPEN LLC (d/b/a A1 WHOLESALE, PARTY NUTS, EVOLUTIONARY ORGANICS, INNOVO ACTIVAS, AMERICAN KRATOM-D); MARTIAN SALES, INC.; CAG HOLDINGS CO, LLC (d/b/a COMPANION AG); CALIBRE MANUFACTURING, LLC (f/k/a ADVANCED NUTRITION, LLC); FMK GROUP, LLC. (d/b/a OLISTICA LIFE SCIENCE GROUP); JOHN DOE CORPORATIONS 1-10; and OTHER JOHN | Case No. 3:25-cv-00488<br><br>**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT** |

1

DOE ENTITIES 1-10;

    Defendants.

## I.    INTRODUCTION

Plaintiff's First Amended Complaint ("Complaint") fails both jurisdictionally and on the merits.  As pled, only JOpen has any alleged Virginia contacts.  Plaintiff asks the Court to impute those contacts to all the other defendants via a conclusory "alter-ego/single enterprise" theory. That fails as a matter of law and pleading.  Absent plausible alter-ego facts, this Court lacks general jurisdiction (no defendant is "at home" in Virginia) and specific jurisdiction (no purposeful Virginia conduct alleged) over the remaining defendants.  The claims against all defendants other than JOpen should therefore be dismissed under Rule 12(b)(2).

Even if jurisdiction existed, the claims still fail under Rules 12(b)(6) and 9(b).  The Virginia Consumer Protection Act ("VCPA") and fraud-based theories do not meet Rule 9(b): Plaintiff pleads no "who/what/when/where/how," identifies no specific misrepresentation, and relies instead on the unproven premise that kratom is "as addictive as opioids," coupled with conclusory assertions of nondisclosure.  The Complaint also does not plead the elements for the particular VCPA subsections asserted (e.g., unidentified "characteristics," "quality," or "false advertising") and, for subsection (77), does not allege sales in Virginia after the 2024 effective date or show noncompliance even under pre-2024 labels.

The implied-warranty claim fails for want of a defect, violation of any standard, or plausible failure-to-warn—particularly where "representative packaging" of Defendants' packaging attached to Plaintiff's Complaint contains cautionary language and a "not for minors" restriction.

The civil-conspiracy claim fails for multiple, independent reasons: no underlying tort, Rule

2

9(b) deficiencies, intracorporate immunity, and—given the jurisdictional defects—no second conspirator properly before the Court.

In short, Plaintiff has not established personal jurisdiction over any defendant other than JOpen, and—even as to JOpen—has not stated a claim that satisfies the governing pleading standards.  The Court should dismiss under Rules 12(b)(2), 12(b)(6), and 9(b).

## II.    BACKGROUND

### A.    Allegations about Defendants.

Plaintiff alleges that Defendants are part of a "Kratom Enterprise."  *E.g.*, Compl. ¶ 3. Plaintiff alleges that this "Kratom Enterprise" operates under the "OPMS, Remarkable Herbs, and Whole Herbs brand names."  *Id.*  This "Kratom Enterprise" is allegedly "spearheaded" by Defendants Peyton Palaio, Mark Reilly, Mark Jennings and non-party Eyal (David) Gabbay.  *Id.* ¶ 2.  Plaintiff claims that Palaio and Reilly have "employed a web of shell companies, alter egos, business names, assumed names, and trade names to obfuscate the immense scope of their operation and dodge liability for their actions with the Kratom Enterprise." *Id.* ¶ 5.  Plaintiff also alleges that "Defendants operate collectively," because each of them is "within the chain of distribution of the Products, operates as the Kratom Enterprise, controls or owns the Kratom Enterprise, and/or is an affiliate of the Kratom Enterprise."  *Id.*  Plaintiff thus asserts that "Defendants should be considered as part of a collective whole."  *Id.*

Plaintiff includes several conclusory allegations that merely parrot legal elements about this "single enterprise theory."  *Id.* ¶ 25.  Plaintiff asserts that Defendants "[c]ommingled their funds and other assets and failed to segregate funds between them."  *Id.*  Plaintiff asserts that Defendants "[s]hare a unity of interest and ownership that each of the Defendants acts as merely as a shell of the Kratom Enterprise as a whole."  *Id.*

3

Plaintiff's personal jurisdiction allegations rely on this "single enterprise theory" and/or a "conspiracy theory of personal jurisdiction." *Id.*, ¶ 18, 25. Plaintiff alleges that "Defendant JOpen acts as the distributor of the Products throughout the United States, including in Virginia." Compl. ¶ 18. Plaintiff further alleges that "FastIncense acts as the master distributor for the Remarkable Herbs Products, through which all other wholesalers and distributors, across the United States including in Virginia, must first order the Products." *Id.* ¶ 88. Plaintiff alleges "FastIncense knowingly and intentionally sells and ships the Products to buyers across the country, including in Virginia" and that FastIncense is an "alter-ego" of the "Kratom Enterprise." *Id.* ¶¶ 87, 90. Plaintiff otherwise does not allege any facts that tie Defendants to Virginia.

Plaintiff alleges that Defendants "intentionally and negligently failed to disclose" that kratom is as addictive as opiates. *Id.* ¶ 1. Plaintiff states that this "addictive potential of kratom is a material fact to reasonable consumers which would help them inform their purchase and consumption decisions." *Id.* ¶ 60. Plaintiff also states that "Defendants' Products have no warnings, whatsoever, that kratom is similar to an opioid, is habit-forming, and that regular use will result in opioid-like dependency with withdrawal symptoms similar to those of traditional opioids." *Id.*

Plaintiff alleges that Defendant's failure to "disclose the addictive potential of this drug," leaves them "blindsided" when they eventually experience withdrawals. *Id.* ¶ 56. Plaintiff further alleges that "[c]onsumers who knew the truth about kratom would not have purchased Defendants' Products or would have paid less than they did for them." *Id.* ¶ 61.

## B.    Allegations about Plaintiff.

Plaintiff Corey Tucker alleges that he is addicted to kratom. *Id.* ¶ 8. He claims that he "first purchased Defendants' Products in or around 2022, during which time he was a resident of

Virginia." He claims he "did not want to take anything addictive." *Id.* He alleges he "reviewed the Products' packaging before making his purchase and relied on Defendants' representations in deciding to purchase the Products." *Id*.

Plaintiff alleges that he "experienced severe withdrawal symptoms including fever, insomnia, and restless leg syndrome" when "he attempted to use less of the Product." *Id.* He alleges that "[h]ad he known that Defendants' Products were highly addictive, by way of a warning on the Products' packaging, he would have never purchased the Products." *Id*.

The "representative image" of Defendants' Products' packaging attached to the Complaint includes both "Directions" and a "Disclaimer." *Id.* ¶ 121. The "Directions" tell consumers to "[c]onsult your healthcare professional to determine if this product is right for you, and if so, how to use it safely." *Id.* The "Disclaimer" states, "Do not use product before reading product insert, labels, warnings, directions, disclaimers, and agreeing to terms & conditions, and notices. Visit www.remarkableherbs.com for all updates including full disclaimer and terms & conditions. Leaflet insert is inside packaging." *Id.* The packaging also clearly states that it is "NOT FOR SALE TO MINORS, 21+ ONLY!" *Id.* Plaintiff alleges, however, that "Defendants' glossy website and design language obfuscates the very truth that they are selling a strong narcotic to consumers who likely do not fully comprehend the risks associated with consuming the Products." *Id*., ¶ 120.

## C.    Allegations about Kratom.

Plaintiff alleges that kratom is "derived from the kratom plant, *mitragyna speciosa*," which is indigenous to Southeast Asia and has been "used in herbal medicine since at least the early 19th century." *Id.* ¶ 30. Plaintiff alleges that kratom has a "dose-dependent response," and that low doses of kratom are "stimulating or energizing," whereas high doses are "euphoric, sedating, and

5

analgesic." *Id.* ¶ 37.

The Complaint alleges that kratom's active ingredients "work on the exact same opioid receptors in the human brain as morphine and its analogs," producing "similar effects" and carrying "the same risk of physical addiction and dependency, with similar withdrawal symptoms." *Id.* ¶ 1. Plaintiff characterizes kratom as "perniciously addictive—on an entirely different level than caffeine or nicotine"—and claim Defendants misled consumers by failing to disclose that kratom "operates like an opioid, with similar addiction and dependency risks." *Id.*

Plaintiff repeatedly describes kratom as a "quasi-opiate" and claims that its effects, tolerance, dependence, and withdrawal mirror those of heroin, morphine, and prescription opioids. *Id.* ¶ 41. He alleges that kratom "alleviates opioid withdrawal," but that regular kratom use itself "results in opioid withdrawal symptoms," which they list in detail as including "irritability, anxiety, muscle pain, diarrhea, chills, and extreme dysphoria." *Id.* ¶¶ 42-46.

Plaintiff alleges that kratom addiction "sneaks up" on users and causes long-term psychological and physical deterioration—depression, anxiety, and anhedonia—mirroring their description of classical opioid addiction. *Id.* ¶¶ 47-48.

Plaintiff alleges that "reasonable consumers" do not expect kratom products to have "the same addictive potential of morphine and its analogs." *Id.* ¶ 4. His support for this allegation is excerpts of posts from "support groups" on Reddit, a social media website, dating as far back as "over 5 years" ago. *Id.* ¶¶ 56-57.

**D.    Kratom-Related Facts Subject to Judicial Notice.**

Defendants request that the Court take judicial notice of federal regulators' and the World Health Organization's statements and actions regarding kratom and the extent of kratom's known

6

addictive qualities.[1]  *See* Exs. 1-4.  Defendants do not offer these statements for the truth of the

matter asserted, but to establish Defendants' knowledge about the addictive qualities of kratom

during the relevant period.  Plaintiff's allegation that Defendants knew that kratom's addictive

qualities are tantamount to those of opioids is inconsistent with publicly available sources.

It is undisputed that kratom products are legal and widely available for purchase.  The

National Institute on Drug Abuse ("NIDA")[2] is studying and funding studies investigating

beneficial uses of kratom, including to help treat opioid addiction, and potential adverse effects.

Ex. 1.  NIDA is one of twenty-seven Institutes and Centers that comprise the National Institutes

of Health, which is part of the U.S. Department of Health and Human Services.  *Id.*

In 2018, the Food and Drug Administration ("FDA") specifically decided not to

recommend that the Drug Enforcement Administration schedule kratom as a controlled

substance.[3]  This decision was based on "many factors, in part on new data, and in part on the

relative lack of evidence, combined with an unknown and potentially substantial risk to public

health if these chemicals were scheduled at this time."  Ex. 2.

---

[1] Courts in this circuit and others "routinely take judicial notice of information contained on state and federal government websites."  *U.S. v. Garcia*, 855 F. 3d 615, 621 (4th Cir. 2017) (collecting cases).

[2] NIDA, founded in 1974, is a federal scientific research institute and the world's largest funder of biomedical research.  *See* Dr. Nora Volkow, 50 years after funding, NIDA urges following science to move beyond stigma, NATIONAL INSTITUTE ON DRUG ABUSE (Feb. 1, 2024), available at https://nida.nih.gov/about-nida/noras-blog/2024/02/50-years-after-founding-nida-urges-following-science-to-move-beyond-stigma.  NIDA supports and conducts a wide range of preclinical, clinical, and population-level research regarding drug use and health.  *Id.*  NIDA then disseminates important results of the research it undertakes and supports to the public, health professionals, researchers, and policymakers.  *Id.*

[3] The Controlled Substances Act provides that the "Attorney General may by rule add" to Schedule I any drug if findings are made that "[t]he drug has a *high potential for abuse*," "[t]he drug or other substance has no currently accepted medical use in treatment in the United States," and that "[t]here is a lack of accepted safety for use of the drug or other substance under medical supervision."  21 U.S.C. §§ 811(a), 812(b) (emphasis added).

In December 2021, the Expert Committee on Drug Dependence ("ECDD") at the World Health Organization and the U.S. Commission of Narcotic Drugs, comprised of twelve international experts on substance safety and addiction, unanimously concluded that there was insufficient evidence to recommend a critical international scheduling review of kratom. "People report using kratom to self-medicate a variety of disorders and conditions, including pain, opioid withdrawal, opioid use disorder, anxiety and depression," ECDD said in its report. "Kratom is being used as a part of traditional medicine in some countries. The Committee considered information regarding the traditional use and investigation into possible medical applications of kratom." Ex. 3. "The Committee concluded that there is insufficient evidence to recommend a critical review of kratom." *Id.*

The FDA has only recently begun to conduct formal scientific studies of kratom. In January 2024, the FDA posted a new grant opportunity to fund the first clinical trial "to characterize the abuse potential and subjective effects of botanical Kratom." Ex. 4. As of the time of the Complaint, the FDA has not selected a grant recipient. *See id.* On September 19, 2024, the FDA issued preliminary results of its first study on kratom products, which showed clearly, as the agency put it, that "[k]ratom leaves appear safe even at high doses when taken in capsule form."[4] The study further noted: "The data suggest that at the doses tested, using the specific botanical kratom sourced for the study, and under carefully controlled clinical conditions . . . kratom was well tolerated."[5] Over the course of the study, the FDA found no serious

---

[4] *See* Ex. 5, Fiona Rutherford & Immanual John Milton, *Kratom's First FDA Study Suggests Capsules Safe at High Doses*, Bloomberg (Sept. 17, 2024).

[5] Ex. 6, Kelly Teal, *FDA pilot study on kratom leaf concludes botanica 'is well tolerated,'* SupplySide (Sept. 24, 2024), https://www.supplysidesj.com/herbs-botanicals/fda-pilot-study-on-kratom-leaf-concludes-botanical-is-well-tolerated-.

complications and stated that it "recognize[s] that further studies are needed to advance our understanding of kratom." The FDA noted plans for additional peer-reviewed research in the near future. *Id.*

### E.    Plaintiff's Causes of Action.

Plaintiff asserts five causes of action: (1) violation of the VCPA (Va. Code Ann. § 59.1-196, *et seq.*) (2) breach of implied warranty, (3) unjust enrichment, (4) fraud by omission, and (5) common law civil conspiracy. Compl. ¶¶ 143-194. He brings his claims on behalf himself and on behalf of a class of "[a]ll persons nationwide who, within the applicable statute of limitations period, purchased Remarkable Herbs Products (the "Nationwide Class")" and "[a]ll persons who, within the applicable statute of limitations period, purchased Remarkable Herbs Products while in Virginia (the "Virginia Subclass")." *Id.* ¶ 132.

### III.    ARGUMENT

### A.    Legal Standard.

To survive a motion to dismiss, a complaint must contain "enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). Plausibility requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678. Because of this, a complaint cannot only plead facts that are "merely consistent with a defendant's liability." *Id.* (citation omitted). "Threadbare recitals of the elements of a cause of action, merely supported by conclusory statements, do not suffice." *Id.*

### B.    Plaintiff Fails to Allege Personal Jurisdiction over any Defendant.

### 1.    Defendants are not subject to general or specific personal jurisdiction in Virginia.

9

The only bases for personal jurisdiction over Defendants other than JOpen that Plaintiff alleges is (i) an alter ego theory and (ii) a conspiracy theory.  JOpen is not challenging personal jurisdiction, and Plaintiff claims that JOpen's contacts should be imputed to the other Defendants.

Plaintiff has the burden to show that this Court has personal jurisdiction over Defendants. *See Consulting Engineers Corp. v. Geometric Ltd.*, 561 F. 3d 273, 276-277 (4th Cir. 2009).  And on a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, "the jurisdictional question thereby raised is one for the judge, with the burden on the plaintiff ultimately to prove grounds for jurisdiction by a preponderance of the evidence."  *Mylan Laboratories, Inc. v. Akzo*, 2 F. 3d 56, 60 (4th Cir. 1993).  Where the court resolves the challenge without a separate evidentiary hearing, the plaintiff must prove "a prima facie case of personal jurisdiction" wherein "the district court must draw all reasonable inferences arising from the proof, and resolve all factual disputes, in the plaintiff's favor." *Id.*

However, "district courts are not required . . . to look solely to the plaintiff's proof in drawing those inferences," and "correctly look[]" to both sides' "proffered proof" to decide the challenge.  *Id*. at 62-63 (affirming district court's dismissal for lack of personal jurisdiction where plaintiff "offered no persuasive evidence . . . to counter" defendant's affidavits).

Plaintiff has not met his burden to prove personal jurisdiction over any Defendant other than JOpen, and so Plaintiff's claims against all Defendants other than JOpen must be dismissed.

### a.     This Court does not have general jurisdiction over Defendants.

First, while Plaintiff employs the jargon of general jurisdiction ("Defendants have, at all times relevant hereto, systematically and continually conducted, and continue to conduct, business in this State," Compl. ¶ 28), there is no basis for Plaintiff to claim this Court has general jurisdiction over any Defendants.  "[G]eneral jurisdiction over foreign (sister-state or foreign-country)

10

corporations is limited to cases where their affiliations with the State are so continuous and systematic as to render them essentially *at home in the forum State.*"  *Fidrych v. Marriott Int'l, Inc.*, 952 F.3d 124, 132 (4th Cir. 2020) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919, 131 S. Ct. 2846, (2011)) (emphasis in original).  "[A] corporation may be fairly regarded as at home in the forum where it is incorporated and the forum where it has its principal place of business."  *Fidrych*, 952 F.3d at 134.

Plaintiff does not allege that any defendant is "at home" in Virginia.  *See generally* Compl. Plaintiff thus does not show that this Court has general jurisdiction over Defendants.  Moreover, the evidence offered by Defendants establishes that there is no basis for general jurisdiction.  Ex. 7, Decl. of Skelmis, LLC; Ex. 8, Decl. of Tautline LLC; Ex. 9, Decl. of Fastincense.com; Ex. 10, Decl. of LGI Holdings, LLC; Ex. 11, Decl. of LP Ind., LLC; Ex. 12, Decl. of Martian Sales, Inc.; Ex. 13, Decl. of CAG Holdings, LLC; Ex. 14, Decl. of Calibre Manufacturing, LLC; Ex. 15, Decl. of FMK Group, LLC.

> **b.   This Court does not have specific jurisdiction over Defendants other than JOpen.**

Likewise, this Court does not have specific jurisdiction over Defendants other than JOpen. To establish specific jurisdiction, the "plaintiff must prevail" on each of three prongs: "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable."  *Perdue Foods LLC v. BRF S.A.*, 814 F.3d 185, 189 (4th Cir. 2016).

Specific jurisdiction fails at the outset because Plaintiff does not plead that *any* Defendant other than JOpen has *any* contacts with Virginia.  *See generally* Compl.  Plaintiff's only path to jurisdiction over the remaining Defendants is thus an alter ego theory or conspiracy theory that

11

would impute JOpen's contacts to everyone else.  Those theories fail as a matter of law and pleading.

> **2.    Plaintiff cannot impute JOpen's alleged Virginia contacts to the rest of the defendants using an alter ego theory.**

Because JOpen is the only Defendant with any Virginia contacts, Plaintiff seeks to pierce the corporate veil to establish personal jurisdiction over the remaining Defendants.[6]  *Id.* ¶ 18. Plaintiff's allegations are insufficient as a matter of law.

> **a.    Plaintiff must allege plausible facts supporting an alter ego theory.**

To plead personal jurisdiction under an alter ego theory, a plaintiff must "plausibly allege that [one defendant] is the mere alter ego of [the other] such that the corporate form should be disregarded." *William v. AES Corp.*, 28 F. Supp. 3d 553, 565 (E.D. Va. 2014).  "Virginia law provides that a court can pierce the corporate veil only upon showing that (1) the corporation was the *alter ego,* alias, stooge, or dummy of the other entity; and (2) the corporation was a device or sham used to disguise wrongs, obscure fraud or conceal crime." *William v. AES Corp.*, 28 F. Supp. 3d 553, 562 (E.D. Va. 2014) (internal quotations and citations omitted).

"Alter ego liability may attach where there is such unity between a corporation and an individual that the separateness of the corporation has ceased." *Id.* at 562 (internal quotations and citations omitted).  The Fourth Circuit considers several factors in determining whether dominion and control is sufficiently complete to disregard the corporate form, including "gross undercapitalization, insolvency, siphoning of funds, failure to observe corporate formalities and maintain proper corporate records, non-functioning of officers, control by a dominant stockholder,

---

[6] Plaintiff alleges "Defendant Jopen acts as the distributor of the Products throughout the United States, including in Virginia" (Compl. ¶ 18), that "FastIncense acts as the master distributor for the Remarkable Herbs Products" (*id.* ¶88) and that FastIncense is an "alter-ego" of the "Kratom Enterprise" (*id.* ¶ 87).

and injustice or fundamental unfairness." *Vitol, S.A. v. Primerose Shipping Co. Ltd.*, 708 F. 3d 527, 532 (4th Cir. 2013).

### b.     Defendants may legally divide their discrete operations into separate corporate entities.

There is nothing wrong with a business owner dividing business operations into separate corporate entities. *Dewberry Grp., Inc. v. Dewberry Eng'rs Inc.*, 145 S. Ct. 681, 686 (2025) ("[I]f corporate law treated all affiliated companies as (in the District Court's phrase) 'a single corporate entity,' we might construe the term 'defendant' in the same vein—as sweeping in the named defendant's affiliates because they lack a distinct identity. But in fact the usual rule is the opposite. '[I]t is long settled as a matter of American corporate law that separately incorporated organizations are separate legal units with distinct legal rights and obligations.'") (quoting *Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.*, 591 U.S. 430, 433 (2020)). Corporate law is designed to limit liability, and courts invoke the equitable doctrine of alter ego liability sparingly. *See id.*

The Fourth Circuit has "long recognized that a corporation is an entity, separate and distinct from its officers and stockholders, and the individual stockholders are not responsible for the debts of the corporation." *Kinney Shoe Corp. v. Polan*, 939 F.2d 209, 211 (4th Cir. 1991). "[A] corporate entity is liable for the acts of a separate, related entity only under extraordinary circumstances, commonly referred to as 'piercing the corporate veil.'" *Vitol*, 708 F.3d at 543.

### c.     Plaintiff fails to plausibly allege facts supporting an alter ego theory.

Plaintiff's allegations set forth nothing more than a normal business operation. Allegations that merely make a plausible allegation that defendants "maintain a close business relationship" are not sufficient to allege "the sort of dominion, control, failure to observe corporate formalities, or fundamental unfairness needed to state a claim for alter ego status." *Vitol*, 708 F.3d at 547.

Plaintiff never identifies which entity supposedly dominated which other entities, or how the corporate form was used to "disguise wrongs" with the particularity Virginia law demands. *See William*, 28 F. Supp. 3d at 562-65.

Plaintiff admits that Defendants are in a "chain of distribution" of kratom, Compl. ¶ 5. Plaintiff alleges that the Defendants have different roles in that distribution chain. For example, Plaintiff alleges that LGI handles kratom imports, *id.* ¶ 16, Calibre processes kratom, *id.* ¶ 83, JOpen acts as "wholesaler," *id.* ¶86, and FastIncense "acts as the master distributor," *id.* ¶ 88. Such well-delineated corporate forms and functions do not suggest that any of the Defendants are so completely dominated that they are merely the "alias, stooge, or dummy of the other entity." *William v. AES Corp.*, 28 F. Supp. 3d 553, 562 (E.D. Va. 2014). As such, Plaintiff's own allegations contradict his alter ego theory.

In the paragraphs alleging Defendants operate in furtherance of a single business enterprise, Plaintiffs' start by listing six wrongful death lawsuits involving some of the defendants, all of which are pending outside of Virginia and are utterly irrelevant to the present matter. *Id.*, ¶ 93. Plaintiffs then add six paragraphs that, despite their verbosity, collectively allege nothing more than that JOpen paid some of Martian Sales' expenses on Martian's behalf, first through an oral contract and later through a written one. *See id.*, ¶¶ 95-100. Although Plaintiffs attempt to allege that JOpen paid the debts of Martian Sales from 2012 to 2020 without repayment, the supporting testimony was in reference to an exhibit presented at the deposition that Plaintiffs did not provide here. *See* SAC, Exh. I at 275:13-276:24. And, while the snippet of testimony is hard to follow, a close reading reveals that it actually undermines Plaintiffs' alter ego assertions: the deponent testified that the entities "squared up" at one point and that JOpen and Martian Sales entered into a written contract in 2020. *Id*. Accordingly, the testimony supports the existence of an arms-

14

length relationship, not an alter ego or single enterprise theory. *See Id.*

The next paragraphs attempt to allege that Defendants "structured themselves to perpetrate a fraud." Plaintiffs' allegations, however, are supported with conclusions and supposition drawn from innocuous facts such as that many of the defendants "intentionally incorporated themselves in Wyoming" and that the Defendants are represented by the same law firm via a joint defense agreement. *Id.*, ¶¶ 104-108.

Paragraphs 109 and 110 attempt to show "common officers" and "common offices" among the Defendants, but they accomplish the opposite. Those allegations collectively establish that some defendants have offices in Georgia and some (but not Martian Sales, Inc. or JOpen) use a management company (CC US) for accounting and other functions. *See id.* ¶¶ 109–110.

### d.    Plaintiff's conspiracy theory of personal jurisdiction fails.

Although "[t]he Fourth Circuit has recognized a conspiracy theory of jurisdiction . . . Plaintiff still must plead some connection between [each alleged conspirator] and Virginia in furtherance of the alleged conspiracy*." Straight Line Drive, Inc. v. Vanatta,* 2020 WL 7647637, *4–5, (2020 E.D.Va.) (finding no personal jurisdiction for alleged conspirator who "conducted a transaction associated with a Virginia business only through an intermediary, and . . . at no point proactively acted or reached into Virginia.")

Plaintiff's complaint cites *Galloway v. Martorello*, 2023 WL 5183204 (E.D. Va.)—a federal RICO claim case operating under the expanded jurisdictional basis of Rule 4(k)(2)—in support of their conspiracy-based personal jurisdiction theory. That reliance is unavailing. In *Galloway*, the court's jurisdictional finding rested on a robust evidentiary record demonstrating that the offshore defendant knowingly participated in a nationwide lending scheme targeting U.S. borrowers, with clear contractual and financial ties to the forum. There, the alleged conspiracy's

15

principal object was direct forum impact, and the defendant's conduct was purposefully directed at the United States, including Virginia.  Here, by contrast, plaintiffs' First Amended Complaint (i) states only state-law tort and consumer protection claims and (ii) offers no allegations that any non-JOpen defendant agreed to, directed, or ratified an overt act in Virginia or even had any knowledge that the alleged conspiracy's effects would be felt in Virginia.  The FAC thus fails to plead purposeful availment by each defendant as required by *Walden v. Fiore*, 571 U.S. 277 (2014), and *Perdue Foods LLC v. BRF S.A.*, 814 F.3d 185 (4th Cir. 2016).  Jurisdiction cannot be established through group pleading or vicarious association alone. The jurisdictional theory advanced in *Galloway* does not apply here, and plaintiffs have not satisfied the requirements for conspiracy-based personal jurisdiction under Fourth Circuit law.

Because Plaintiff has not pled facts to establish general or specific jurisdiction over any Defendant other than JOpen, and because the alter-ego and conspiracy theories are inadequately pled and legally deficient, the Court should dismiss all other Defendants under Rule 12(b)(2).

**C.      Plaintiff Fails to Allege a Virginia Consumer Protection Act Claim (Count I).**

**1.      Plaintiff's Consumer Protection Act Claim fails to satisfy Rule 9(b)'s requirements.**

Count I alleges a claim under the VCPA for which proving fraud is a prerequisite. *Nahigian v. Juno Loudoun, LLC*, 684 F. Supp. 2d 731, 741 (E.D. Va. 2010) ("To properly state a cause of action under the VCPA, Plaintiff must allege (1) fraud, (2) by a supplier, (3) in a consumer transaction.").

**a.      Counts I sounds in fraud and must comply with Rule 9(b).**

Because an alleged violation of the VCPA sounds in fraud, Plaintiff's allegations for Count I must satisfy Rule 9(b)'s particularity requirements.  *Id.* at 741 ("To properly state a cause of action under the VCPA . . . . [a]s a claim sounding in fraud, Rule 9(b)'s particularity requirements

16

apply"). Failure to comply with Rule 9(b)'s pleading standard is treated as a failure to state a claim under Rule 12(b)(6). *Id.* (quoting *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 n. 5 (4th Cir. 1999)).

"In Virginia, to succeed on a claim for fraud, a party must show '(1) a false representation, (2) of a material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party misled, and (6) resulting damage to the party misled.'" *State Farm Mut. Auto. Ins. Co. v. Remley*, 270 Va. 209, 618 S.E.2d 316, 321 (2005) (citations omitted).

"To satisfy the heightened pleading standard of Rule 9(b), a plaintiff must state with particularity 'the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'" *Beasley v. FV-I, Inc.*, 1:13-CV-116, 2013 WL 1192018, at *3 (E.D. Va. Mar. 21, 2013) (quoting *In re Mut. Funds Inv. Litig.*, 566 F.3d 111, 120 (4th Cir. 2009)).

> ### b. Plaintiff claims Defendants fraudulently concealed that kratom is as addictive as an opiate.

Plaintiff alleges only fraudulent concealment. Plaintiff does not provide "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Feeley v. Total Realty Mgmt*, 660 F. Supp. 2d 700, 712 (E.D. Va. Aug. 28, 2009) (quoting *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999)). Plaintiff alleges that Defendants did not disclose that kratom was as addictive as an opiate. Compl. ¶ 187. Plaintiff claims that this was fraudulent because Defendants knew that kratom purportedly has similar "active ingredients" that "work[] on the exact opioid receptors in the human brain as morphine," and thus has "the same risk of physical addiction and dependency, with similar withdrawal symptoms." *Id.* ¶ 1.

Plaintiff alleges "Defendants intentionally and knowingly misrepresented … facts

17

regarding the addictive nature of the Products," Compl. ¶ 156, "market[ed] them as safe, reliable, and of high quality", *id.* ¶ 154, used "false and misleading packaging and marketing," *id.* ¶ 130, but fails to provide any explanation of the purported misrepresentations that could meet the pleading standard of Rule 9(b).

Plaintiff's allegations thus depend entirely on its claim that "Defendants deliberately withheld the information about the propensity of the addictive nature of the Products." Compl. ¶ 154.

### c. Plaintiff must allege that Defendants concealed material facts about which they had superior knowledge.

Plaintiff must allege that Defendants concealed characteristics of kratom about which they had superior knowledge. Under Virginia law a duty to disclose arises (1) "if the fact is material and the one concealing has superior knowledge and knows the other is acting upon the assumption that the fact does not exist"; or (2) "if one party takes actions which divert the other party from making prudent investigations (*e.g.*, by making a partial disclosure)." *Bank of Montreal v. Signet Bank*, 193 F.3d 818, 829 (4th Cir. 1999).

"Concealment of a material fact by one who knows that the other party is acting upon the assumption that the fact does not exist constitutes actionable fraud." *Id.* at 827 (quoting *Allen Realty Corp. v. Holbert*, 227 Va. 441, 450, 318 S.E.2d 592, 597 (1984)). But "silence does not constitute concealment in the absence of a duty to disclose." *Id.*

Plaintiff does not allege a "partial disclosure" that diverted him from making prudent investigations. Rather, Plaintiff alleges that Defendants "have exclusive or superior knowledge of kratom's addictive nature, which was not known to Plaintiff or the Virginia Subclass members." *Id.*, ¶ 156.

### a. Plaintiff fails to allege fraudulent concealment.

18

Plaintiff's allegations do not satisfy Rule 9(b)'s requirements. Defendants had no duty to disclose what is not known or not true. Nor could Defendants have intended to mislead Plaintiff by failing to disclose facts that are unknown or not true. These allegations do not plausibly rise to the level of fraud. *Corder v. Antero Resources Corp.*, 57 F. 4th 384, 402 (4th Cir. 2023) ("When alleging fraud by omission or concealment, plaintiffs may partly rely on information and belief without running afoul of Rule 9(b). However, they must state the factual allegations that make their belief plausible.").

### (1) Plaintiff fails to plausibly allege that kratom is as addictive as opioids or that Defendants knew that.

Plaintiffs' claims rest on the assertion that kratom is functionally equivalent to opioids in its pharmacology and addiction potential. The Complaint alleges that kratom's active ingredients "work on the exact same opioid receptors in the human brain as morphine and its analogs," producing "similar effects" and carrying "the same risk of physical addiction and dependency, with similar withdrawal symptoms." Compl. ¶ 1. Plaintiffs characterize kratom as "perniciously addictive—on an entirely different level than caffeine or nicotine"—and claim Defendants misled consumers by failing to disclose that kratom "operates like an opioid, with similar addiction and dependency risks." *Id.*

To support that theory, Plaintiffs repeatedly describe kratom as a "quasi-opiate" and claim that its effects, tolerance, dependence, and withdrawal mirror those of heroin, morphine, and prescription opioids. They allege that kratom "alleviates opioid withdrawal," but that regular kratom use itself "results in opioid withdrawal symptoms," which they list in detail as including "irritability, anxiety, muscle pain, diarrhea, chills, and extreme dysphoria." *Id.* ¶¶ 42-46.

Plaintiffs conclude that kratom addiction "sneaks up" on users and causes long-term psychological and physical deterioration—depression, anxiety, and anhedonia—mirroring their

19

description of classical opioid addiction. *Id*. ¶¶ 47-48. Thus, the core factual premise of Plaintiffs' theory of liability is that kratom is materially indistinguishable from opioids in both neurochemical action and addictive potential.

The judicially noticed facts show that Plaintiff's allegation that Defendants "knew" that kratom was as addictive as opiates, or "results in opioid withdrawal symptoms," is not plausible. *See e.g.*, Compl. ¶ 42. "Even on a motion to dismiss, this court is 'not obliged to accept allegations that . . . 'contradict matters properly subject to judicial notice or by exhibit.'" *Peete-Bey v. Educ. Credit Mgmt. Corp.*, 131 F. Supp. 3d 422, 433 (D. Md. 2015) (quoting *Massey v. Ojaniit*, 759 F.3d 343, 353 (4th Cir. 2014)). In deciding a motion to dismiss, "courts may consider relevant facts obtained from the public record, so long as these facts are construed in the light most favorable to the plaintiff along with the well-pleaded allegations of the complaint." *Massey*, 759 F.3d at 353. A complaint must contain "enough facts to state a claim for relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

The science on the addictive potential of kratom, and the extent of withdrawal symptoms, is still evolving. And nowhere does science claim that the addictive qualities of kratom are comparable to opioids. NIDA, for example, states that "people may experience mild to moderate withdrawal symptoms when they stop regular kratom use, but more research is needed to understand to what extent people develop substance use disorder symptoms related to kratom." Ex. 1. Likewise, the DEA has specifically declined to schedule kratom as a Schedule I drug because the science about its abuse potential is still evolving. Ex. 2.

If the FDA believed that kratom is as addictive as opiates it would have directed the DEA to schedule kratom as a banned substance. It has not done so. Given all this, Plaintiff's allegations that Defendants "knew" that kratom was as addictive as opiates and thus fraudulently concealed

20

that fact are simply not plausible.

Plaintiff thus fails to plausibly allege that Defendants had "superior knowledge" and thus a duty to disclose that kratom was "as addictive as opioids," or could cause "opioid-like withdrawals." Plaintiff's failure to plausibly allege such a duty is fatal to several of Plaintiff's claims, including Plaintiff's fraud and negligent misrepresentation claims. This Court thus should dismiss these claims against Defendants.

Plaintiff's theory that Defendants fraudulently concealed that kratom is as addictive as opioids is not plausible. Moreover, Plaintiff's theory that Defendants purported failure to include on packaging that kratom is as *addictive as opioids* does not satisfy federal pleading standards, especially under Rule 9(b). This Court should dismiss Plaintiff's claims against Defendants because they all rely on this theory.

### (2)    Plaintiff's own allegations contradict his fraudulent nondisclosure claim.

Plaintiff's own allegations belie Defendants' "superior knowledge." As courts have repeatedly stated, "when a complaint contains inconsistent and self-contradictory statements, it fails to state a claim." *E.g.*, *Arkansas Nursing Home Acquisition*, *LLC v. CFG Cmty. Bank*, 460 F. Supp. 3d 621, 637 (D. Md. 2020)

For example, Plaintiff admits that information about kratom and its purported similarities to opioids has been known since the early 1800s. Compl. ¶ 30 ("The first reported use of kratom in scientific literature dates back to 1836 when it was noted that the leaves of the tree were used by Malays *as a substitute for opium*." (emphasis added)). Plaintiff also says that use of kratom has been "particularly well-documented in Thailand, Indonesia, and Malaysia," and that it is the "most widely used drug in Thailand." *Id.* ¶ 31. Plaintiff further alleges that the "FDA has warned consumers not to use kratom because of the risk of … substance use disorder." *Id.* ¶¶ 49-50.

21

Plaintiff's allegations that Defendants intended to defraud him also are contradicted Defendants' products include warnings that kratom can be habit forming, among other things. Plaintiff's fraudulent concealment allegations are not plausible for this reason as well.  Plaintiff attaches a "representative image" of kratom packaging that instructs consumers to "consult your healthcare professional to determine if this product is right for you, and if so, how to use it safely." *Id.* ¶ 121.  This type of direct labeling can only mean to a reasonable consumer that kratom can be abused and with potential adverse health effects.  Along the same lines, the "representative image" of packaging shows that it is "NOT FOR SALE TO MINORS, 21+ ONLY!"  This too should suggest to a reasonable consumer that caution should be exercised when using kratom products. Thus, far from deceiving consumers about known risks associated with kratom, the warning was printed on the packaging.

> **(3)      Plaintiff fails to allege discrete culpable conduct by specific defendants.**

Plaintiff's Complaint independently fails because it groups the Defendants together and fails to allege the specific Defendant allegedly responsible for committing the alleged fraud.  "Rule 9(b) requires that allegations of fraud be pled with specificity [and] [g]rouping defendants together in a pleading fails to satisfy the requirement that the who, what, when, where, why and how, be pled with specificity."  *Iron Workers Local 16 Pension Fund v. Hi/h Rogal & Hobbs Co.*, 432 F. Supp. 2d 571, 579 (E.D. Va. 2006).

Plaintiff cannot overcome this failure with his conclusory single enterprise allegations. "'[C]onclusory assertions that one defendant controlled another, or that some defendants are guilty because of their association with others, do not inform each defendant of its role in the fraud and do not satisfy Rule 9(b).'"  *Haley v. Corcoran*, 659 F. Supp. 2d 714, 721 (D. Md. 2009) (*Kolbeck v. LIT America, Inc.*, 923 F.Supp. 557, 569 (S.D.N.Y. 1996)).  The court should dismiss Counts I

22

and IV for this independent reason as well.

       2.       **Plaintiff fails to allege specific violations of VCPA §§ 59.1-200 (A) (5), (6), (8), (14), and (77).**

The Court should dismiss Count I because Plaintiff fails to allege facts—as required by Rule 9(b)—supporting Plaintiff's claim that Defendants have engaged in any conduct specifically prohibited by any VCPA §§ 59.1-200 (A) subsections, particularly, the ones that Plaintiff has alleged Defendants violated, (5), (6), (8), (14), and (77).  Section 59.1-200 (A) of the VCPA "declare[s] unlawful" certain delineated "fraudulent acts or practices committed by a supplier in connection with a consumer transaction."

As explained below, Plaintiff merely recites conclusory statements alleging certain sections of the statute have been violated.  This does not meet Rule 9(b)'s standards.  Moreover, "[t]he mere recital of elements of a cause of action, supported only by conclusory statements, is not sufficient to survive a motion made pursuant to Rule 12(b)(6)."  *Walters v. McMahen*, 684 F. 3d 435, 439 (4th Cir. 2012).

       a.       **Misrepresenting unidentified characteristics (subsection 5).**

The VCPA declares unlawful "[m]isrepresenting that goods or services have certain quantities, characteristics, ingredients, uses, or benefits."  VCPA §§ 59.1-200 (A) (5).  Plaintiff alleges that Defendants violated the VCPA by "[r]epresenting that the Products have characteristics that they do not have" but fails to identify any characteristics that Defendants allegedly falsely represented were present but which the Products "do not have."  Compl. ¶ 151.

       b.       **Misrepresenting quality (subsection 6).**

The VCPA declares unlawful "[m]isrepresenting that goods or services are of a particular standard, quality, grade, style, or model."  VCPA §§ 59.1-200 (A) (6).  Plaintiff alleges that Defendants violated the VCPA by "[r]epresenting that the Products are of a particular standard

and quality when they are not" but fails to identify any particular standards or qualities that Defendants allegedly falsely represented the Products have. Compl. ¶ 151.

### c.    False Advertising (subsection 8).

The VCPA declares unlawful "[a]dvertising goods or services with intent not to sell them as advertised, or with intent not to sell at the price or upon the terms advertised." VCPA §§ 59.1-200 (A) (8). Plaintiff alleges that Defendants violated the VCPA by "[a]dvertising the Products with the intent not to sell them as advertised," but fails to identify any specific advertising or explanation for how Defendants advertised the Product "with the intent not to sell them as advertised." Compl. ¶ 151.

### d.    Selling Addictive Substances (subsection 14).

Plaintiff alleges that Defendants violated the VCPA by "[s]elling addictive substances to unsuspecting consumers and profiting from their addiction," but does not explain how the alleged conduct violates the VCPA. Compl. ¶ 151. Many substances that are legally sold may be potentially addictive, but this characteristic does not mean they ipso facto violates the VCPA.

### b.    Selling Kratom Without the Statutory Disclaimer (subsection 77).

Effective January 1, 2024, the VCPA was amended to declare unlawful "[s]elling or offering for sale (i) any kratom product to a person younger than 21 years of age or (ii) any kratom product that does not include a label listing all ingredients and with the following guidance: 'This product may be harmful to your health, has not been evaluated by the FDA, and is not intended to diagnose, treat, cure, or prevent any disease.' As used in this subdivision, 'kratom' means any part of the leaf of the plant Mitragyna speciosa or any extract thereof." VCPA §§ 59.1-200 (A) (77). Plaintiff alleges Defendants violated the VCPA by selling kratom that does not include the statutory disclaimer. Compl. ¶ 124.

24

However, Plaintiff claims that he began purchasing kratom from Defendants in 2022. *Id.* ¶ 8. Virginia follows "'the fundamental principles of statutory construction that retroactive laws are not favored, and that a statute is always construed to operate prospectively unless a contrary legislative intent is manifest." Gionis v. Commonwealth, 76 Va. App. 1, 11, 880 S.E.2d 1, 6 (2022) (quoting Berner v. Mills, 265 Va. 408, 413, 579 S.E.2d 159, 161 (2003)). Here, there is no legislative expression that VCPA §§ 59.1-200 (A) (77) should be retroactively applied. And although Plaintiff attaches representative images of the products he purchased that do not include the statutory disclaimer verbatim, he does not allege that Defendants sold products without the disclaimer in Virginia on or after January 1, 2024.

Regardless, Plaintiff's own allegations demonstrate that even had Defendants sold any products at issue in Virginia pre-2024, the labels were compliant. The pre-2024 disclaimer on the representative packaging includes all three elements of the statutory disclaimer: (i) it explains the "product contains chemicals known … to cause … harm," (ii) it explains its statements "have not been evaluated by the Food and Drug Administration" and (iii) that the product is "not intended to diagnose, treat, cure, or prevent any disease." *Compare* Va. Code Ann. § 59.1-200(A)(77) and Compl. ¶ 121.

### c.    Other practices.

The VCPA declares unlawful "[u]sing any other deception, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction." VCPA §§ 59.1-200 (A) (14). Plaintiff alleges Defendants violated the VCPA by "[e]ngaging in any other deception, fraud, false pretense, false promise, or misrepresentation that had the tendency to mislead consumers." Compl. ¶ 151.

Plaintiff's allegation that Defendants misled consumers by failing to disclose that kratom

is as addictive as opioids is not plausible for the reasons discussed above.  Compl. ¶¶ 1, 41. Government websites of which this Court can take judicial notice contradict that any scientific evidence exists that kratom is as addictive as opioids.   "Representative packaging" of kratom packaging depicted in Plaintiff's complaint warns that kratom can be abused, advises caution and instructs consumers to consult a health care professional.

Plaintiff's conclusory recitals of the statute fail to plausibly allege claims under the VCPA against Defendants.  This Court should dismiss these claims.  *Walters v. McMahen*, 684 F. 3d at 439.

**D.      Plaintiff Fails to Allege a Breach of Implied Warranty (Count II).**

Plaintiff fails to allege facts supporting a breach of implied warranty claim for much the same reasons his VCPA claim fails.  "The basic analytical framework applicable to products liability claims in Virginia is the same whether a plaintiff is bringing a negligence or breach of implied warranty action."  *Benedict v. Hankook Tire Co. Ltd.*, 295 F. Supp. 3d 632, 637 (E.D. Va. 2018) (*citing Jeld-Wen, Inc. v. Gamble by Gamble*, 256 Va. 144, 501 S.E.2d 393, 396 (1998)). Under either theory, a "products liability plaintiff must establish three elements: (1) the product must contain a defect which rendered it unreasonably dangerous for ordinary or foreseeable use; (2) the defect must have existed when it left the defendant's hands; and (3) the defect must have actually caused the plaintiff's injury."  *Id*. (internal citations and quotations omitted).

"For a plaintiff to prove that an 'unreasonably dangerous' defect existed, '[h]e or she must establish the violation of industry or government standards, or prove that consumer expectations have risen above such standards.'"  *Id*. (quoting *Alevromagiros v. Hechinger Co.*, 993 F. 2d 417, 422 (4th Cir. 1993)).  Plaintiff has failed to make any allegations regarding industry or government standards and thus has not plead a viable theory for breach of implied warranty on that basis.

26

Moreover, for the reasons explained above, Plaintiff has failed to allege that Defendants have failed to meet consumer expectations for safety. "A product is 'unreasonably dangerous' if defective (1) in assembly or manufacture, (2) if imprudently designed, or (3) if not accompanied by adequate warnings about its hazardous properties." *Abbot v. American Cyanamid Co.*, 844 F.2d 1108, 1114 (4th Cir. 1988). Plaintiff's claims that kratom is as addictive as opioids does not state a design or manufacturing defect claim and is not plausible, for reasons discussed above. Moreover, Plaintiff's allegations are made against kratom in general—effectively that kratom should not be legal at all. But kratom, including Defendants' products, is legally sold in Virginia.

Nor does Plaintiff allege any failure to warn claim. In Virginia, the lack of warning may render the product unreasonably dangerous and thereby breaches an implied warranty arising under Va. Code § 8.2-315." *Goodbar v. Whitehead Bros.*, 591 F. Supp. 552 (W.D. Va. 1984). The "representative packaging" depicted in Plaintiff's Complaint warns that kratom can be abused, advises caution, and instructs consumers to consult a health care professional.

## E.    Plaintiff Fails to Allege an Unjust Enrichment Claim (Count III).

Plaintiff's unjust enrichment claim is barred under Virginia law because his purchase of kratom was governed by an express contract, as alleged in Plaintiff's Complaint.[7] "To avoid unjust enrichment, equity will effect a contract implied in law, *i.e.,* a quasi contract, requiring one who

---

[7] "A cause of action for unjust enrichment in Virginia 'rests upon the doctrine that a man shall not be allowed to enrich himself unjustly at the expense of another.'" *Rosetta Stone Ltd. v. Google, Inc.*, 676 F. 3d 144, 165 (4th Cir. 2012) (quoting *Kern v. Freed Co.*, 224 Va. 678, 299 S.E.2d 363, 365 (1983)). "A plaintiff asserting unjust enrichment must demonstrate the following three elements: '(1) he conferred a benefit on [the defendant]; (2) [the defendant] knew of the benefit and should reasonably have expected to repay [the plaintiff]; and (3) [the defendant] accepted or retained the benefit without paying for its value.'" *Id.* at 165-166 (*quoting Schmidt v. Household Finance Corp.*, 276 Va. 108, 661 S.E.2d 834, 838 (2008)). "An implied-in-fact contract is an actual contract that was not reduced to writing, but the court infers the existence of the contract from the conduct of the parties." *Id.* at 166.

27

accepts and receives the services of another to make reasonable compensation for those services." *Rosetta* Stone, 676 F. 3d at 166 (internal citations and quotations omitted). "[T]he concept of an implied-in-law contract, or quasi contract, applies **only when there is not an actual contract** or meeting of the minds." *Rosetta* Stone, 676 F. 3d at 166 (emphasis added).

Here, Plaintiff alleges there was an actual contract. *See e.g.*, Compl. ¶ 165 (alleging "Defendants breached the warranty implied **in the contract** for the sale of their Products"). Accordingly, Plaintiff cannot allege unjust enrichment under an implied-in-law contract. *Doll v. Ford Motor Co.*, 814 F. Supp. 2d 526, 551 (D. Md. 2011) ("In this instance, Plaintiffs have not disputed Defendant's contention that an express contract governs the subject matter of the claim. Consequently, without a dispute concerning the existence of a contract, Plaintiffs are barred from alleging both theories in their Amended Complaint.").

Moreover, Plaintiff fails to allege any facts showing Defendant "should reasonably have expected to repay" Plaintiff any portion of the purchase price of its products. "To recover under a contract 'implied-in-fact,' a plaintiff must allege 'facts to raise an implication that the *defendant promised to pay* the plaintiff for such benefit.'" *Rosetta* Stone, 676 F. 3d at 166 (quoting *Nedrich v. Jones*, 245 Va. 465, 429 S.E.2d 201, 207 (1993)). Plaintiff has not alleged that defendants "promised to pay" plaintiff any amount, so the Complaint has also not alleged unjust enrichment under an implied-in-fact theory.

This Court should thus dismiss Plaintiff's unjust enrichment claim against Defendants.

**F.      Plaintiff Fails to Allege a Common Law Fraud Claim (Count IV).**

Count IV expressly alleges a fraud claim, under the common law. Plaintiff has failed to allege a fraud claim as required by Rule 9(b) for the same reasons as Plaintiff fails to allege a VCPA claim. *See* supra at III. Argument (C).

28

### G.      Plaintiff Fails to Allege a Common Law Civil Conspiracy.

Because Plaintiff has not pleaded that an underlying tort was committed, he is not able to plead a civil conspiracy claim.  "A common law conspiracy consists of two or more persons combined to accomplish, by some concerted action, some criminal or unlawful purpose or some lawful purpose by a criminal or unlawful means." *Commercial Bus. Sys., Inc. v. BellSouth Servs., Inc.*, 249 Va. 39, 453 S.E.2d 261, 267 (1995).

Thus, "in Virginia, a common law claim of civil conspiracy generally requires proof that the underlying tort was committed." *Almy v. Grisham*, 273 Va. 68, 80, 639 S.E.2d 182, 188 (2007). Accordingly, because Plaintiff's underlying causes of action fail to state a claim for the reasons stated above, so does his conspiracy claim against the Individual Defendants, Peyton Palaio, Mark Reilly, and Mark Jennings.  Compl. ¶¶ 189–94.

Further, "the doctrine of intracorporate immunity holds that because at least two persons must be present to form a conspiracy, a corporation cannot conspire with itself." *American Chiropractic Ass'n v. Trigon Healthcare*, 151 F. Supp. 2d 723, 731 (W.D. Va.).  "Since a corporation is an artificial entity, it can only act through its authorized agents, officers, and employees." *Id*.  "Thus, a conspiracy between a corporation and its agents, acting within the scope of their employment, is a legal impossibility." *Id*.  The Complaint alleges that, for example, "Defendant Mark Reilly is the president of Martian Sales, Inc."  Compl. ¶ 19.  It is a legal impossibility for Martian Sales, Inc. to conspire with its own president, and thus the Complaint fails to allege a common law conspiracy between the Individual Defendants, such as Mark Reilly, and the corporate defendants such as Martian Sales, Inc.

Furthermore, "the Supreme Court of Virginia has recognized the principle that a claim for civil conspiracy 'cannot be maintained in a suit involving a single defendant where the same

underlying torts are also asserted by separate counts against the same defendant.'" *NorthStar Aviation, LLC v. Alberto*, 332 F. Supp. 3d 1007, 1018 (E.D. Va. 2018). Accordingly, because this court lacks personal jurisdiction over any defendant other than JOpen, "a claim of civil conspiracy is neither a necessary, nor a proper mechanism, for imputing liability to [the Individual Defendants]." *Id*.

Moreover, "Rule 9(b) applies to allegations of conspiracy to defraud." *Feeley v. Total Realty Mgmt*, 660 F. Supp. 2d 700, 712 (E.D. Va. Aug. 28, 2009). To allege a common law conspiracy, the Complaint must identify facts that "elevate[] the allegations from possible parallel conduct to an indication that there was an actual meeting of the minds." *Id*. at 712-13. Where "Plaintiffs have only assorted bare allegations of conspiracy," the allegations of a conspiracy must be dismissed. *Id*. That is the case here. The Complaint makes the unsupported allegations that "the Individual Defendants entered into an agreement to unlawfully mislead consumers into believing that the Products are not addictive when they actually are," Compl. ¶ 191, and that the Individual Defendants took wrongful actions that were "made maliciously, with the intent to induce Plaintiff and the Members of the Classes into purchasing the Products and become addicted to them," Compl. ¶ 193. The Complaint, however, offers no facts that support the existence of such a conspiracy.

Thus, the Court should thus dismiss Plaintiff's allegations of a conspiracy and dismiss all claims against the Individual Defendants.

## IV. CONCLUSION

For the above reasons, this Court should dismiss Plaintiff's claims against Defendants.

DATED December 8, 2025           Respectfully submitted,

By: /s/ Chad D. Hansen
CHAD D. HANSEN

Virginia Bar No. 96705
KILPATRICK TOWNSEND & STOCKTON LLP
1001 West Fourth Street
Winston-Salem, North Carolina 27191
Telephone: (336) 607-7308
Facsimile: (336) 734-2616
chadhansen@ktslaw.com

Gwendolyn C. Payton (to be admitted pro hac vice)
KILPATRICK TOWNSEND & STOCKTON LLP
1420 5th Avenue, Suite 3700
Seattle, WA 98101
Telephone: (206) 467-9600
Facsimile: (206) 623-6793
gpayton@ktslaw.com

*Attorneys for Defendants*

31

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that, on December 8, 2025, I electronically filed the foregoing

document with the Clerk of the Court using CM/ECF.

By: /s/ *Chad D. Hansen*

CHAD D. HANSEN
Virginia Bar No. 96705
KILPATRICK TOWNSEND & STOCKTON LLP
1001 West Fourth Street
Winston-Salem, North Carolina 27191
Telephone: (336) 607-7308
Facsimile: (336) 734-2616
chadhansen@ktslaw.com

32